**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| HANS RUEDELSTEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>                    v.<br><br>U.S. CONCRETE, INC., WILLIAM J. SANDBROOK, WILLIAM M. BROWN, and JOSEPH C. TUSA JR.,<br><br>                              Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No.** 4:17-cv-266<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Hans Ruedelstein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding U.S. Concrete, Inc. ("U.S. Concrete" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired U.S. Concrete securities between March 6, 2015 and March 23, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     U.S. Concrete, Inc. produces and sells ready-mixed concrete, aggregates, and concrete-related products and services for the construction industry in the United States. It operates through two segments, Ready-Mixed Concrete and Aggregate Products.

3.     Founded in 1997, the Company is headquartered in Euless, Texas. U.S. Concrete's stock trades on NASDAQ under the ticker symbol "USCR."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company lacked effective internal controls over financial reporting; and (ii) as a result of the foregoing, U.S. Concrete's public statements were materially false and misleading at all relevant times.

5.     On March 24, 2017, U.S. Concrete filed a Current Report on Form 8-K with the SEC, announcing the resignation of the Company's Chief Financial Officer, Joseph Tusa, and advising investors that the Company had dismissed its previous auditor, Grant Thornton LLP ("Grant Thornton"), and engaged Ernst & Young LLP ("Ernst & Young") as its new public accounting firm.  The Company stated, in relevant part:

**Item 4.01      Changes in Registrant's Certifying Accountant.**

On March 21, 2017, the Audit Committee (the "Audit Committee") of the Board of Directors of U.S. Concrete, Inc., a Delaware corporation (the "Company"), in consultation with the Company's Board of Directors, approved the engagement of Ernst & Young LLP ("Ernst & Young") as the Company's new independent registered public accounting firm, effective March 22, 2017.

The Company's current independent registered public accounting firm, Grant Thornton LLP ("Grant Thornton"), was notified on March 22, 2017 of its immediate dismissal.

The reports of Grant Thornton on the Company's consolidated financial statements for the fiscal years ended December 31, 2016 and 2015 did not contain an adverse opinion or a disclaimer of opinion and were not qualified or modified as to uncertainty, audit scope or accounting principles.

During the fiscal years ended December 31, 2016 and 2015 and the subsequent interim period through March 22, 2017, there have been no "disagreements" (as defined in Item 304(a)(1)(iv) of Regulation S-K and related instructions) with Grant Thornton on any matter of accounting principles or practices, financial statement disclosure or auditing scope or procedure, which disagreements, if not resolved to the satisfaction of Grant Thornton, would have caused Grant Thornton to make reference thereto in their reports on the consolidated financial statements for such fiscal years. During the fiscal years ended December 31, 2016 and 2015 and any subsequent interim period through March 22, 2017, there have been no "reportable events" (as defined in Item 304(a)(1)(v) of Regulation S-K), except that the Company's internal control over financial reporting was not effective due to the existence of material weaknesses in the Company's internal control over financial reporting. As disclosed in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, a material weakness relating to management review controls associated with the completeness and accuracy of computations relating to income tax accounts and disclosures was identified. As disclosed in the Company's Amendment No. 1 on Form 10-K/A, which amended the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2015, a material weakness relating to the accuracy and presentation of the accounting for income taxes, including the income tax provision and related tax assets and liabilities was identified.

***

**Resignation of Chief Financial Officer, Principal Financial Officer and Principal Accounting Officer**

On March 24, 2017, the Company announced that Joseph C. "Jody" Tusa, Jr., the Company's Senior Vice President and Chief Financial Officer, has resigned from his positions with the Company for personal reasons, effective as of July 1, 2017

(the "Separation Date"). Mr. Tusa's role as principal accounting officer will cease on April 1, 2017. Mr. Tusa's anticipated departure is not as a result of any disagreement with the Company.

6.      On this news, U.S. Concrete's share price fell $5.90, or 8.84%, to close at $60.80 on March 24, 2017.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is properly laid in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  U.S. Concrete's principal executive offices are located within this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired U.S. Concrete securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

4

13.     Defendant U.S. Concrete is incorporated in Delaware. The Company's principal executive offices are located at 331 N. Main Street, Euless, Texas 76039. U.S. Concrete's shares trade on the NASDAQ under the ticker symbol "USCR."

14.     Defendant William J. Sandbrook ("Sandbrook") has served as the Company's Chief Executive Officer ("CEO") and President since August 22, 2011, and served as its Interim Principal Financial Officer from October 23, 2015 to February 1, 2016.

15.     Defendant William M. Brown ("Brown") served as the Company's Chief Financial Officer ("CFO") and Senior Vice President from August 22, 2012 to August 25, 2015.

16.     Defendant Joseph C. Tusa Jr. ("Tusa") has served as the Company's CFO and Senior Vice President since February 1, 2016.  On March 24, 2017, the Company announced Tusa's resignation from the Company, effective as of July 1, 2017.

17.     The Defendants referenced above in ¶¶ 14-16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     U.S. Concrete, Inc. produces and sells ready-mixed concrete, aggregates, and concrete-related products and services for the construction industry in the United States. It operates through two segments, Ready-Mixed Concrete and Aggregate Products.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on March 6, 2015, when U.S. Concrete filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2014 (the "2014 10-K").  For the quarter, U.S. Concrete reported net income of $870,000, or $0.06 per diluted share, on revenue of

$179.51 million, compared to a net loss of $5.14 million, or $0.38 per diluted share, on revenue of $148.14 million for the same period in the prior year. For fiscal year 2014, U.S. Concrete reported net income of $20.58 million, or $1.48 per diluted share, on revenue of $703.71 million, compared to a net loss of $20.13 million, or $1.56 per diluted share, on revenue of $598.16 million for fiscal year 2013.

20.     In the 2014 10-K, the Company stated, in relevant part:

**Disclosure Controls and Procedures**

As of December 31, 2014, our management, with the participation of our principal executive officer and our principal financial officer, evaluated the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")), which are designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures include controls and procedures that are designed to provide reasonable assurance that information required to be disclosed in the reports that we file or submit under the Exchange Act is accumulated and communicated to management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure. Based on the evaluation, our principal executive officer and our principal financial officer have concluded that our disclosure controls and procedures were effective at the reasonable assurance level as of December 31, 2014.

**Management's Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as that term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act).  Our internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with generally accepted accounting principles. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies and procedures may deteriorate.

On December 5, 2014, we acquired the assets of Mobile-Crete of South Texas, LLC and Scofield Construction Services, LLC (collectively, "Mobile-Crete"). Our

6

management has acknowledged that it is responsible for establishing and maintaining a system of internal controls over financial reporting for Mobile-Crete. We are in the process of integrating Mobile-Crete, and therefore have excluded Mobile-Crete from our December 31, 2014 assessment of the effectiveness of internal control over financial reporting. The impact of the Mobile-Crete transaction has not, nor is it expected to, materially affect our internal control over financial reporting.

Under the supervision and with the participation of our management, including our principal executive, financial and accounting officers, we have conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in "*Internal Control – Integrated Framework (2013)*" issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on that evaluation, our management has concluded that our internal control over financial reporting was effective as of December 31, 2014.

Grant Thornton LLP, the Company's independent registered public accounting firm, has audited our consolidated financial statements included in this report and has issued an attestation report on the Company's internal control over financial reporting, which is included herein.

**Changes in Internal Control over Financial Reporting**

There were no changes in our internal control over financial reporting during the quarter ended December 31, 2014 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

21.     The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Sandbrook and Brown, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22.     On May 8, 2015, U.S. Concrete filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q"). For the quarter, U.S. Concrete reported a net loss of $10.48 million, or $0.77 per diluted share, on revenue of $171.34 million, compared to a net loss of $1.15 million, or $0.09 per diluted share, on revenue of $146.26 million for the same period in the prior year.

23.     The Q1 2015 10-Q contained signed certifications pursuant to SOX by Defendants Sandbrook and Brown, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On August 6, 2015, U.S. Concrete filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q"). For the quarter, U.S. Concrete reported net income of $9.70 million, or $0.64 per diluted share, on revenue of $244.70 million, compared to net income of $7.86 million, or $0.57 per diluted share, on revenue of $180.36 million for the same period in the prior year.

25.     The Q2 2015 10-Q contained signed certifications pursuant to SOX by Defendants Sandbrook and Brown, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     On November 6, 2015, U.S. Concrete filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 10-Q"). For the quarter, U.S. Concrete reported net income of $1.62 million, or $0.10 per diluted share, on revenue of $295.11 million, compared to net income of $13.01 million, or $0.94 per diluted share, on revenue of $197.59 million for the same period in the prior year.

27.     The Q3 2015 10-Q contained signed certifications pursuant to SOX by Defendant Sandbrook, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On March 4, 2016, U.S. Concrete filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K"). For the quarter, U.S. Concrete reported a net loss of $6.25 million, or $0.43 per diluted share, on revenue of $263.57 million, compared to net income of $870,000, or $0.06 per diluted share, on revenue of $179.51 million for the same period in the prior year. For fiscal year 2015, U.S. Concrete reported a net loss of $5.41 million, or $0.38 per diluted share, on revenue of $974.72 million, compared to net income of $20.58 million, or $1.48 per diluted share, on revenue of $703.71 million for fiscal year 2014.

29.     In the 2015 10-K, the Company stated, in relevant part:

**Disclosure Controls and Procedures**

As of December 31, 2015, our management, with the participation of our principal executive officer and our principal financial officer, evaluated the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")), which are designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures include controls and procedures that are designed to provide reasonable assurance that information required to be disclosed in the reports that we file or submit under the Exchange Act is accumulated and communicated to management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure. Based on the evaluation, our principal executive officer and our principal financial officer have concluded that our disclosure controls and procedures were effective at the reasonable assurance level as of December 31, 2015.

**Management's Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as that term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act). Our internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with generally accepted accounting principles. Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any

evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies and procedures may deteriorate.

On October 27, 2015, we acquired the equity of Heavy Materials, LLC ("Heavy") and Spartan Products, LLC ("Spartan"). Our management has acknowledged that it is responsible for establishing and maintaining a system of internal controls over financial reporting for Heavy and Spartan. We are in the process of integrating Heavy and Spartan, and, therefore, have excluded Heavy and Spartan from our December 31, 2015 assessment of the effectiveness of internal control over financial reporting. The impact of the Heavy and Spartan transactions have not, nor are they expected to, materially affect our internal control over financial reporting. Heavy and Spartan represented 5.1% of our consolidated total assets and 0.4% of our consolidated revenues included in our consolidated financial statements as of and for the year ended December 31, 2015. Management will include Heavy and Spartan in its fiscal 2016 assessment of internal control over financial reporting.

Under the supervision and with the participation of our management, including our principal executive, financial and accounting officers, we have conducted an evaluation of the effectiveness of our internal control over financial reporting based on the framework in *Internal Control – Integrated Framework (2013)*" issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on that evaluation, our management has concluded that our internal control over financial reporting was effective as of December 31, 2015.

Grant Thornton LLP, the Company's independent registered public accounting firm, has audited our consolidated financial statements included in this report and has issued an attestation report on the Company's internal control over financial reporting, which is included herein.

**Changes in Internal Control over Financial Reporting**

There were no changes in our internal control over financial reporting during the quarter ended December 31, 2015 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

30.     The 2015 10-K contained signed certifications pursuant to SOX by Defendants Sandbrook and Tusa, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     On May 6, 2016, U.S. Concrete filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q"). For the quarter, U.S. Concrete reported a net loss of $10.03 million, or $0.68 per diluted share, on revenue of $245.05 million, compared to a net loss of $10.48 million, or $0.77 per diluted share, on revenue of $171.34 million for the same period in the prior year.

32.     The Q1 2016 10-Q contained signed certifications pursuant to SOX by Defendants Sandbrook and Tusa, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.     On August 5, 2016, U.S. Concrete filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q"). For the quarter, U.S. Concrete reported a net loss of $3.48 million, or $0.23 per diluted share, on revenue of $275.75 million, compared to net income of $9.70 million, or $0.64 per diluted share, on revenue of $244.70 million for the same period in the prior year.

34.     The Q2 2016 10-Q contained signed certifications pursuant to SOX by Defendants Sandbrook and Tusa, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     On November 4, 2016, U.S. Concrete filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q"). For the quarter, U.S. Concrete reported net income of

$37.96 million, or $2.34 per diluted share, on revenue of $328.59 million, compared to net income of $1.62 million, or $0.10 per diluted share, on revenue of $295.11 million for the same period in the prior year.

36.     The Q3 2016 10-Q contained signed certifications pursuant to SOX by Defendants Sandbrook and Tusa, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

37.     On February 28, 2017, U.S. Concrete filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 10-K").  For the quarter, U.S. Concrete reported a net loss of $15.59 million, or $1.01 per diluted share, on revenue of $318.78 million, compared to a net loss of $6.25 million, or $0.43 per diluted share, on revenue of $263.57 million for the same period in the prior year. For fiscal year 2016, U.S. Concrete reported net income of $8.86 million, or $0.55 per diluted share, on revenue of $1.16 billion, compared to a net loss of $5.41 million, or $0.38 per diluted share, on revenue of $974.72 million for fiscal year 2015.

38.     In the 2016 10-K, the Company stated, in relevant part:

**Disclosure Controls and Procedures**

As of December 31, 2016, our management, with the participation of our principal executive officer and our principal financial officer, evaluated the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")), which are designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures include controls and procedures that are designed to provide reasonable assurance that information required to be disclosed in the reports that we file or submit under the Exchange Act is accumulated and communicated to management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure.

***Based on that evaluation and due to the material weakness in our internal control over financial reporting discussed below, our principal executive officer and principal financial officer have concluded that the Company's disclosure controls and procedures were not effective at the reasonable assurance level as of December 31, 2016.***

**Management's Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as that term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act). Our internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with generally accepted accounting principles.

Under the supervision and with the participation of our management, including our principal executive, financial and accounting officers, we have conducted an evaluation of the effectiveness of our internal control over financial reporting (excluding the 2016 New York Acquisitions as described above) based on the framework in "*Internal Control - Integrated Framework (2013)*" issued by the Committee of Sponsoring Organizations of the Treadway Commission. Based on that evaluation, our management has concluded that our internal control over financial reporting as of December 31, 2016 was not effective because of the identification of the material weakness described below.

A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement in our annual or interim financial statements will not be prevented or detected on a timely basis. During the course of our assessment, management concluded that a material weakness previously identified and disclosed, relating to the accuracy and presentation of the accounting for income taxes, had not been fully remediated. ***Management concluded that a material weakness in its internal control over financial reporting existed as of December 31, 2016 relating to management review controls associated with the completeness and accuracy of computations relating to income tax accounts and disclosures.***

Grant Thornton LLP, the Company's independent registered public accounting firm, has audited our consolidated financial statements included in this report and has issued an attestation report on the Company's internal control over financial reporting, which is included herein.

Notwithstanding our material weakness, we have concluded that the financial statements and other financial information included in this Annual Report on Form 10-K fairly present in all material respects our financial condition, results of operations and cash flows as of, and for, the periods presented.

(Emphasis added.)

39.     The 2016 10-K contained signed certifications pursuant to SOX by Defendants Sandbrook and Tusa, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

40.     The statements referenced in ¶¶ 19-39 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company lacked effective internal controls over financial reporting; and (ii) as a result of the foregoing, U.S. Concrete's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

41.     On March 24, 2017, U.S. Concrete filed a Current Report on Form 8-K with the SEC, announcing the resignation of the Company's Chief Financial Officer, Joseph Tusa, and advising investors that the Company had dismissed its previous auditor, Grant Thornton, and engaged Ernst & Young as its new public accounting firm.   The Company stated, in relevant part:

**Item 4.01        Changes in Registrant's Certifying Accountant.**

On March 21, 2017, the Audit Committee (the "Audit Committee") of the Board of Directors of U.S. Concrete, Inc., a Delaware corporation (the "Company"), in consultation with the Company's Board of Directors, approved the engagement of Ernst & Young LLP ("Ernst & Young") as the Company's new independent registered public accounting firm, effective March 22, 2017.

The Company's current independent registered public accounting firm, Grant Thornton LLP ("Grant Thornton"), was notified on March 22, 2017 of its immediate dismissal.

The reports of Grant Thornton on the Company's consolidated financial statements for the fiscal years ended December 31, 2016 and 2015 did not contain an adverse opinion or a disclaimer of opinion and were not qualified or modified as to uncertainty, audit scope or accounting principles.

During the fiscal years ended December 31, 2016 and 2015 and the subsequent interim period through March 22, 2017, there have been no "disagreements" (as defined in Item 304(a)(1)(iv) of Regulation S-K and related instructions) with Grant Thornton on any matter of accounting principles or practices, financial statement disclosure or auditing scope or procedure, which disagreements, if not resolved to the satisfaction of Grant Thornton, would have caused Grant Thornton to make reference thereto in their reports on the consolidated financial statements for such fiscal years. During the fiscal years ended December 31, 2016 and 2015 and any subsequent interim period through March 22, 2017, there have been no "reportable events" (as defined in Item 304(a)(1)(v) of Regulation S-K), except that the Company's internal control over financial reporting was not effective due to the existence of material weaknesses in the Company's internal control over financial reporting. As disclosed in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, a material weakness relating to management review controls associated with the completeness and accuracy of computations relating to income tax accounts and disclosures was identified. As disclosed in the Company's Amendment No. 1 on Form 10-K/A, which amended the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2015, a material weakness relating to the accuracy and presentation of the accounting for income taxes, including the income tax provision and related tax assets and liabilities was identified.

*** 

**Resignation of Chief Financial Officer, Principal Financial Officer and Principal Accounting Officer**

On March 24, 2017, the Company announced that Joseph C. "Jody" Tusa, Jr., the Company's Senior Vice President and Chief Financial Officer, has resigned from his positions with the Company for personal reasons, effective as of July 1, 2017 (the "Separation Date"). Mr. Tusa's role as principal accounting officer will cease on April 1, 2017. Mr. Tusa's anticipated departure is not as a result of any disagreement with the Company.

42.     On this news, U.S. Concrete's share price fell $5.90, or 8.84%, to close at $60.80

on March 24, 2017.

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired U.S. Concrete securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, U.S. Concrete securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by U.S. Concrete or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of U.S. Concrete;

- whether the Individual Defendants caused U.S. Concrete to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of U.S. Concrete securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

50.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- U.S. Concrete securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold U.S. Concrete securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

18

54. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of U.S. Concrete securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire U.S. Concrete securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for U.S. Concrete securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about U.S. Concrete's finances and business prospects.

57.     By virtue of their positions at U.S. Concrete, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.   Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.   In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.   As the senior managers and/or directors of U.S. Concrete, the Individual Defendants had knowledge of the details of U.S. Concrete's internal affairs.

59.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of U.S. Concrete.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to U.S. Concrete's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of U.S. Concrete securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning U.S. Concrete's business and financial condition which were concealed by Defendants, Plaintiff and the other

members of the Class purchased or otherwise acquired U.S. Concrete securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60.     During the Class Period, U.S. Concrete securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of U.S. Concrete securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of U.S. Concrete securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of U.S. Concrete securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

63.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     During the Class Period, the Individual Defendants participated in the operation and management of U.S. Concrete, and conducted and participated, directly and indirectly, in the conduct of U.S. Concrete's business affairs.  Because of their senior positions, they knew the adverse non-public information about U.S. Concrete's misstatement of income and expenses and false financial statements.

65.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to U.S. Concrete's financial condition and results of operations, and to correct promptly any public statements issued by U.S. Concrete which had become materially false or misleading.

66.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which U.S. Concrete disseminated in the marketplace during the Class Period concerning U.S. Concrete's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause U.S. Concrete to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of U.S. Concrete within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of U.S. Concrete securities.

67.     Each of the Individual Defendants, therefore, acted as a controlling person of U.S. Concrete.  By reason of their senior management positions and/or being directors of U.S.

Concrete, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, U.S. Concrete to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of U.S. Concrete and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by U.S. Concrete.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 28, 2017

Respectfully submitted,


/s/ Willie C. Briscoe
Willie C. Briscoe
Texas Bar No.: 24001788
**THE BRISCOE LAW FIRM, PLLC**
3131 McKinney Avenue, Suite 600
Dallas, Texas 75204
214-643-6011
281-254-7789 (Facsimile)
wbriscoe@thebriscoelawfirm.com


**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, _Hans Ruedelstein_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against U.S. Concrete, Inc. ("U.S. Concrete" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire U.S. Concrete securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired U.S. Concrete securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in U.S. Concrete securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _3/26/2017_
             **(Date)**


_____
             **(Signature)**

_HANS   RUEDELSTEIN_
             **(Type or Print Name)**

**U.S. CONCRETE INC (USCR)**                                    **Ruedelstein, Hans**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 3/1/2017 | Purchase | 34 | $67.9396 |